IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>  v.<br><br>EEE BUSINESS INC., ET AL.,<br><br>  Defendants.<br>_____ / | No. C 09-01888 JSW<br><br>**ORDER GRANTING HARTFORD'S MOTION FOR SUMMARY JUDGMENT** |

Now before the Court is the motion for summary judgment or, in the alternative, for summary adjudication filed by Plaintiff Hartford Casualty Insurance Company ("Hartford"). Hartford moves for summary judgment on its first cause of action for declaratory relief as to the duty to defend, its second cause of action for declaratory relief as to the duty to indemnify, and its third cause of action for reimbursement. The Court finds the motion noticed for hearing on Friday, November 13, 2009 at 9:00 a.m., is appropriate for decision without oral argument. Accordingly, the hearing date is hereby VACATED. Having considered the parties' pleadings, relevant legal authority, for the reasons set forth in the remainder of this Order, the Court GRANTS Hartford's motion for summary judgment.

**BACKGROUND**

On April 2, 2007, Microsoft filed a complaint against defendants EEE Business, Inc. ("EEE"), Lifeng Wang ("Wang"), Ming Ni Shang ("Shang") and Nancy Linker (collectively "the EEE Defendants"). That underlying case was pending before this Court as Case No. 07-

1839 JSW ("the Underlying Lawsuit"). Microsoft alleges that the EEE Defendants imported and sold counterfeit Microsoft software in the United States and alleged causes of action for (1) copyright infringement, (2) infringing importation of copyrighted works, (3) violation of the Digital Millennium Copyright Act, (4) violation of Anti-Counterfeiting Amendments Act of 2004, (5) tortious interference with contractual relations, and (6) for an accounting. Microsoft claimed damages in excess of $1 million. (First Amended Complaint ("FAC") at ¶ 8.)

Microsoft alleged that it operates a "Student Media" program whereby it distributes software at a discounted price through qualified educational institutions in the United States and in certain developing countries. The Student Media program includes Windows XP and the suite of software programs bundled together in Microsoft Office 2003, *e.g.*, Word, Outlook and Excel. Microsoft alleges that its license agreements with resellers restrict distribution of software in the Student Media program to educational institutions or developing countries. (*Id.* at ¶ 9.)

The complaint in the Underlying Lawsuit alleged that EEE distributed computer software through its website and that it imported and sold Student Media software in the United States that was licensed for sale only outside the United States or for sale to qualified educational users. The complaint alleged instances in which Microsoft investigators purchased such software through the defendants' website on September 29, 2006, January 3, 2007, and on February 8, 2007. In each instance, the complaint alleges that Microsoft determined the software was infringing. (*Id.* at ¶ 10.)

In November 2003, defendant Wang was indicted on two criminal counts for trafficking in counterfeit goods and criminal forfeiture. Wang pled guilty to trafficking in counterfeit goods, agreed to pay restitution to Microsoft. The Northern District Court also entered judgment against Wang for trafficking and Wang was sentenced to two months in prison and three years of supervised release. During her period of supervised released, Wang's probation officer searched Wang's home and found business documents reflecting Wang's operation of EEE business and dealing in the sale of counterfeit software, including Microsoft software.

This Court in the Underlying Lawsuit granted partial summary judgment on liability in Microsoft's favor and entered a permanent injunction on May 5, 2008.

Hartford issued policy number 57 SBA RH3021 DX to named insured EEE with effective dates from January 26, 2007 to January 26, 2008 ("the First Policy"). (*Id.* at ¶ 12.) Hartford issued a second policy with the same policy number to named insured EEE with effective dates from January 26, 2008 through January 26, 2009 ("the Second Policy"). The language of the two policies is substantially identical. (Br. at 6 n.2.) Coverage under the Second Policy was cancelled on March 22, 2008, less than two months into the policy period, as a result of nonpayment of the premium. (FAC at ¶ 13.)

Both policies contain the following insuring agreement:

> **BUSINESS LIABILITY COVERAGE FORM**
> ...
> **A.    COVERAGES**
>
>    **1.    BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**
>
>    **Insuring Agreement**
>    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

(Declaration of Michelle D. Jones ("Jones Decl."), Ex. A at A43.) The policies also include several liability exclusions:

> **B.    EXCLUSIONS**
>
> This insurance does not apply to:
>
> **a.    Expected Or Intended Injury**
>
>    **(1)** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured ...; or
>
>    **(2)** "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or

3

acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

...
**p.** **Personal And Advertising Injury**
"Personal and advertising injury":

    **(1)**    Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    **(2)**    Arising out of the oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

    **(3)**    Arising out of a criminal act committed by or at the direction of an insured;

...

    **(7)**    Arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity. However, this exclusion does not apply to infringement, in your "advertisement", of

        **(a)**    Copyright;

        **(b)**    Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

        **(c)**    Title of any literary or artistic work.

(*Id.* at A45, A50.)

The policies also include the following definitions:

**G.** **LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

**1.**    "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

...
    **b.**    The Internet,...

    **c.**    Any other publication that is given widespread public distribution.

However, "advertisement" does not include:

    **a.**    The design, printed material, information or images contained in or upon the packaging or labeling of any goods or products; or

    **b.**    An interactive conversation between or among persons through a computer network.

(*Id*. at A62.)

4

On February 6, 2009, Wang tendered her defense of the Underlying Lawsuit to Hartford. (Declaration of Stephen P. Ellingson, Ex. Q.) On May 12, 2009, Hartford agreed to defend EEE and Wang subject to a complete reservation of rights. (*Id.*, Ex. R.)

The Court will address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.      Legal Standard on Motion for Summary Judgment.**

A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ. P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251

(7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Governing Insurance Coverage Principles.**

The substantive law of California governs this diversity case. *See Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001). A liability insurer owes a duty to defend whenever there is a potential for indemnity coverage under the insurance policy. *See, e.g., Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299-300 (1993). Where any allegation demonstrates a potential for coverage, the insurer must mount and fund the defense of the entire action, including claims for which there is no potential for coverage. *Buss v. Superior Court*, 16 Cal. 4th 35, 48 (1997). In order to determine whether an insured has made a claim for covered damages, the court must compare the underlying complaints with the terms of the policy. *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 18 (1995). If the underlying complaints and any relevant extrinsic evidence submitted by the insured do not demonstrate that the underlying claims seek damages that are potentially covered under the policy, the insurance company has no duty to defend. *Id.* at 19.

To interpret the meaning of the policy language, courts must first look at the written provisions of the policy. "If the policy language is clear and explicit, it governs. ... When interpreting a policy provision, we must give its terms their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citations omitted). In undertaking this analysis, courts must read limitations on coverage narrowly and insuring agreements "broadly so as to afford the greatest possible protection to the insured." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (quoting *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985)).

Policy exclusions are strictly construed, while exceptions to exclusions are broadly construed in favor of the insured. *MacKinnon*, 31 Cal. 4th at 648; *Aydin Corp. v. First State Ins. Co.,* 18 Cal. 4th 1183, 1192 (1998). An insurer cannot escape its basic duty to insure by

means of an exclusionary clause that is unclear. Any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect. *MacKinnon,* 31 Cal. 4th at 648.

A policy provision is ambiguous if it is susceptible to two or more reasonable constructions. *E.M.M.I., Inc. v. Zurich American Ins. Co.*, 32 Cal. 4th 465, 470 (2004). Any ambiguous terms are interpreted in favor of finding coverage, consistent with the insured's reasonable expectations. *Id.* Policy language must be interpreted as a reasonable lay person would read it, not as it might be analyzed by an attorney or insurance professional. *Id.*; *see also Crane v. State Farm Fire & Casualty Co.*, 5 Cal. 3d 112, 115 (1971). "[W]ords ... are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning" unless used by the parties in that sense. Cal. Civ. Code § 1644.

The insured has the initial burden of demonstrating that, interpreting the facts and allegations most favorably to itself, construing any ambiguities in the Policy in favor of the insured and construing exclusions strictly against the insurer, it is possible that the Policy could potentially cover some damages alleged in any part of the tendered Underlying Action. *See Montrose*, 6 Cal. 4th at 300. It is then the insurer's burden to demonstrate, again construing all ambiguities and restraints on coverage in favor of its insured, that there was no possibility of coverage for any claim made in the Underlying Action. *See id.*

**C.     Microsoft Cannot Meet Its Burden to Demonstrate Duty to Indemnify.**

As a third party judgment creditor, Microsoft has the burden to establish that Hartford owed the EEE Defendants a duty to indemnify, not merely to defend. *See* Cal. Ins. Code § 11580(b)(2). As a non-insured, Microsoft has no standing to raise the duty to defend. "While an insurer has a duty to defend suits which potentially seek covered damages, it has a duty to indemnify only where a judgment has been entered on a theory which is *actually* (not potentially) covered by the policy." *Palmer*, 21 Cal. 4th at 1120 (1999) (quoting *Collin v. American Empire Ins. Co.*, 21 Cal. App. 4th 787, 803 (1994)). In addition, as a third party creditor, Microsoft is subject to the same coverage defenses available against the insured. *See* Cal. Ins. Code § 11580(2).

7

1    On May 5, 2008, this Court granted Microsoft's motion for partial summary judgment
2 on liability against defendant Wang in the Underlying Lawsuit, finding her liable for copyright
3 infringement, unauthorized importation of copyrighted works, unauthorized distribution of
4 product keys, and trafficking in counterfeit volume license key labels. The Court also found
5 Wang liable on a theory of contributory infringement for her knowledge of EEE's infringement
6 and uncontested participation in its business endeavors. (*See* Order dated May 5, 2008, Case
7 no. 07-1839 JSW Docket no. 64.) On January 22, 2009, this Court adopted the magistrate
8 judge's report and recommendation regarding Microsoft's motion for default judgment against
9 defendants EEE Business and Shang and granted the motion in favor of Microsoft. (*See* Order
10 dated January 22, 2009, Case no. 07-1839 JSW Docket no. 108.) On September 29, 2009, this
11 Court entered summary judgment against defendant Wang awarding damages in the amount of
12 $1,400,199.08 and attorneys' fees and costs in the amount of $259,467.17. (*See* Order dated
13 September 29, 2009, Case no. 07-1839 JSW Docket no. 154.) Lastly, the Court entered
14 judgment against defaulting defendants EEE Business and Shang on November 5, 2009 for the
15 same amounts. (*See* Order dated November 5, 2009, Case no. 07-1839 JSW Docket no. 159.)

16    The only theory under which Microsoft claims coverage is for "advertising injury"
17 under the Policies. (*See* Opp. Br. at 7.) According to the terms of the Policies, coverage for
18 advertising injury is excluded for "any violation of any intellectual property rights such as
19 copyright, patent, trademark, trade name, trade secret, service mark or other designation of
20 origin or authenticity," with the exceptions of "[i]nfringement of copyright, slogan, or title of
21 any literary or artistic work, in your 'advertisement.'" (Jones Decl., Ex. A at A50.) To trigger
22 coverage under the advertising injury provisions of the Policies, the Underlying Lawsuit must
23 have alleged, and judgment must have been entered, on the theory of potential for liability on
24 one of the listed offenses and the offense was committed in the course of advertising the
25 insured's goods, products or services. *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254,
26 1277 (1992). The California Supreme Court in *Bank of the West* held that there can be no
27 coverage where the alleged injury had no causal connection to the insured's advertising
28 activities. *Id.* at 1276. The Court explained that "a claim of patent infringement does not

8

'occur in the course ... of advertising activities' within the meaning of the policy even though the insured advertises the infringing product, if the claim of infringement is based on the sale or importation of the product rather than the advertisement." *Id.* at 1275 (citing *National Union Fire Ins. Co. v. Siliconix Inc.*, 729 F. Supp. 77, 80 (N.D. Cal. 1989)). According to the *Siliconix* court, patent infringement cannot constitute an advertising injury because, under 35 U.S.C. § 271, a patent is infringed by making, using or selling a patented invention, not by advertising it. *See Iolab Corp. v. Seaboard Surety Co.,* 15 F.3d 1500, 1506 (9th Cir. 1994) (citing *Siliconix*, 729 F. Supp. at 79). The Ninth Circuit in *Iolab* also cited a California Court of Appeal case which held that "[p]atent infringement cannot be committed in the course of advertising activities" because in patent infringement cases, "the patentee is not injured because a product incorporating its invention is advertised, but because the infringer, without consent, used or sold a product utilizing a patented invention." *Id.* (citing *Aetna Casualty & Surety Co. v. Superior Court*, 19 Cal. App. 4th 320, 328 (1993) (interpreting *Bank of the West*)).

Here, the EEE Defendants' alleged copyright infringement did not have any causal relationship with its advertising as required to fall under the coverage for "advertising injury." The allegations in Microsoft's complaint and the judgment entered in its favor concern merely the fact that the EEE Defendants infringed Microsoft's software copyrights by importing and selling the software in the United States when it was only licensed for sale abroad and to educational institutions. The judgment and the complaint upon which it was entered does not relate to any content in advertising or injury caused therefrom.[1]

Because the underlying judgment in favor of Microsoft is not based upon a covered theory of liability, there is no duty to indemnify and summary judgment is properly granted. *See Palmer*, 21 Cal. 4th at 1120; *see also* Cal. Ins. Code § 11580(b)(2).

---

[1] It remains the case that Microsoft did not allege or secure judgment on any allegations of injury due to advertising, notwithstanding the fact that Microsoft's copyright registration includes "the entire work, including the actual software and product packaging, including an image of the retail box for each work." (*See* Declaration of Elaine Peterson ¶ 5.) Even if the Court were to consider Microsoft's current contention that they were somehow injured by violation of their copyright of the software packaging, the Underlying Lawsuit would still fail to trigger coverage as the definition of "advertisement" specifically excludes "[t]he design, printed material, information or images contained in or upon the packaging or labeling of any goods or product[s]." (Jones Decl., Ex. A at A62.)

**D.   Exclusions Also Preclude Coverage.**

Notwithstanding the fact that the theory of liability is not covered under the applicable Policy provisions, specific exclusions also preclude coverage of the Underlying Action.

### 1.   Intellectual Property Rights Exclusion Bars Coverage.

Coverage is barred by the intellectual property rights exclusion which categorically excludes coverage for any alleged intellectual property right violations unless the infringement of copyright, slogan, or title of literary or artistic work is "in [the insureds'] advertisement." (Jones Decl., Ex. A at A50.)[2]

Summary judgment in the Underlying Action was premised entirely on violation of Microsoft's intellectual property interests, including claims for copyright infringement, unauthorized importation of copyrighted works, unauthorized distribution of product keys, trafficking in counterfeit volume license keys, and violations of the Digital Millennium Copyright Act. There is no reference in the complaint or the judgment to copyrighted packaging, which, in any case, is specifically excepted from the scope of the exclusion. Accordingly, the Policies' intellectual property exclusion bars coverage here.

### 2.   First Publication Exclusion Bars Coverage.

The Policies unambiguously excluded coverage for advertising injury arising after first publication. (*See* Jones Decl., Ex. A at A50 ("This insurance does not apply to ... [personal and advertising injury] [a]rising out of the oral, written or electronic publication of material whose first publication took place before the beginning of the policy period").)

The first publication exclusion bars coverage for an advertising injury caused by publication made before the inception of the insureds' policy. *United National Ins. Co. v. Spectrum Worldwide*, 55 F.3d 772, 777 (9th Cir. 2009). The first publication exclusion applies to subsequent publications as long as they are substantially similar to the previous publications. *Ringler Assoc. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1183 (2000). It is undisputed that the EEE Defendants began advertising the infringing software products before the inception

---

[2] Again, although this exclusion does not apply to infringement of copyright in the "advertisement" in and of itself, "advertisement" does not include a product's packaging. (Jones Decl., Ex. A at A62.)

10

of the First Policy on January 26, 2007.  It is also undisputed that Microsoft's complaint in the Underlying Lawsuit establishes that the EEE Defendants were still advertising the infringing products as of April 2007 when the complaint was filed.  Thus, even if the advertisements were somehow construed in retrospect to be the cause of Microsoft's claimed injuries, the allegations in the underlying complaint establish that coverage for such a claim is excluded by the first publication exclusion.

### 3. Intentional Conduct Exclusions Bar Coverage.

The Policies unambiguously excluded coverage for expected or intended injury.  (*See* Jones Decl., Ex. A at A45 ("This insurance does not apply to ... '[p]ersonal and advertising injury' arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury'").)  The California Insurance Code precludes coverage for willful misconduct.  *See* Cal. Ins. Code § 533.

Regardless of the numerous criminal counts for trafficking in counterfeit goods and criminal forfeiture against defendant Wang preceding the filing of the Underlying Action, this Court's order granting summary judgment on damages specifically concluded that Wang "was aware of EEE Business and its infringing activity."  The Court also concluded that the EEE Defendants knowingly engaged in an unlawful enterprise.  The EEE Defendants were found liable for violations of copyright infringement, infringing importation of copyrighted works, violation of the Digital Millennium Copyright Act, and violation of the Anti-Counterfeiting Amendments Act.  Under this specific exclusion and under California law, there is no coverage for these intentional acts which would cause expected and intended injury.

### E. Summary Judgment is Appropriate Against Other Defendants.

Although the EEE Defendants failed to oppose Hartford's motion for summary judgment, the Court affirmatively finds that the named insureds are not entitled to coverage under the terms of the Policies.  There is nothing establishing that the Underlying Lawsuit falls within the grant of coverage under the advertising injury provisions of the Policies (or any other provisions).  There is no causal connection between the advertising and the allegations of

11

copyright infringement. In addition, even if the underlying complaint fell within the grant of coverage, the Court finds that the intellectual property exclusion, the first publication exclusion and the intentional misconduct exclusion preclude coverage of the Underlying Lawsuit.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Hartford's motion for summary judgment. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: November 10, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE